E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
MIRI SONG (Cal. Bar No. 291140)
Assistant United States Attorney
International Narcotics, Money
  Laundering, & Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2262
     Facsimile: (213) 894-0142
     E-mail:    miri.song@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:23-564-MWF-2 |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT ARIAN ALANI'S MOTION FOR BAIL REVIEW |
| v. | |
| ERICK OVED ESTRADA, ET AL., | |
| **ARIAN ALANI (#2)**, | |
| Defendant. | |

   Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney MiRi Song, hereby files its Opposition to defendant Arian Alani's Motion for Bail Review, and respectfully urges the Court to uphold the detention order repeatedly imposed in this matter by the Honorable Rozella A. Oliver.

//

//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

DATED: March 22, 2024
E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

*/s/ MiRi Song*
MIRI SONG
Assistant United States Attorney
Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Detention was the correct call all three times. It remains the correct call now. The Honorable Rozella A. Oliver, United States Magistrate Judge, repeatedly considered the merits for bail for defendant and found them lacking for good reasons. This is a presumption case where someone was killed because of defendant's actions. Despite his semantic acrobatics, changing narratives, and spin, defendant is an unremorseful drug dealer who purchased fentanyl pills from co-defendant Erick Oved Estrada ("E. ESTRADA") and then sold them to the victim as real oxycodone pills. The victim ultimately paid with his life and died in a mall parking lot from fentanyl poisoning. Defendant did not need medical confirmation before knowing exactly why the victim died. Defendant immediately texted E. ESTRADA that defendant's "boy just died yesterday" and that E. ESTRADA should not be "selling shit with fentanyl." Defendant flushed the rest of the pills down the toilet to spare himself the same fate.

Despite all this and despite his claims that he is still grieving the loss of a dear friend, defendant continued to possess and distribute drugs after the victim's death. As evidenced by the drugs, digital scale, baggies, and other indicia of use and distribution found in both defendant's residence (which he shared with his proposed surety, Cedric Cid) and person on two separate dates after the victim's death, defendant continued to use and deal drugs both at his house and at parties with "friends." These are not the actions of someone who is aggrieved or remorseful. Genuine grief is what is etched heavy on the victim's family's faces every

1  time they show up to these bond reconsideration hearings, knowing
2  that they will never get their son or brother back but showing up
3  anyway because their love is stronger than their grief.
4      On top of the glaring danger that defendant poses to himself
5  and the community, defendant poses a risk of nonappearance.
6  Defendant is a citizen of Denmark with a history of, and the means
7  for, international travel.  This is concerning in light of
8  defendant's compelling incentive to flee a potential 20-year
9  mandatory minimum sentence.  Defendant has been in custody for less
10 than four months before petitioning the Court for bail two times
11 beyond his first request at his initial appearance.  He will not
12 dawdle here for the possibility of 240 months more if given the
13 chance.  As Magistrate Judge Oliver recognized, bail is not
14 appropriate here because the risks of nonappearance and danger to
15 the community cannot be bought with a cash bond and mitigated with
16 unsuitable sureties, promises that defendant will be law abiding
17 from now on, restrictions against travel, and other offered
18 conditions.  Magistrate Judge Oliver's decisions ordering detention
19 should therefore be upheld.
20 **II.  PROCEDURAL HISTORY**
21     On November 15, 2023, defendant was indicted for Conspiracy to
22 Distribute Controlled Substances, in violation of 21 U.S.C. § 846,
23 and Distribution of Fentanyl Resulting in Death, in violation of 21
24 U.S.C. §§ 841(a)(1), (b)(1)(C).  (ECF No. 1.)  A week later,
25 defendant was arrested and made his initial appearance on November
26 22, 2023, at which time he was ordered detained.  (ECF No. 33.)  On
27 December 15, 2023, defendant applied for a review of the order of
28 detention.  (ECF No. 77.)  On December 20, 2023, Magistrate Judge

Oliver held a hearing and ordered defendant permanently detained. (ECF No. 82.)  Defendant applied again for reconsideration of his detention order, and proposed the following sureties and conditions of release:

- Two sureties (Cedric Cid and Virginia Cid);
- $300,000 bond secured by $20,000 in cash;
- Enrollment in residential drug treatment facility;
- Drug testing and mental health evaluation;
- Location monitoring with curfew;
- Travel restricted to this district;
- Surrender of travel documents; and
- Others the Court deems appropriate.

(ECF No. 115.)  One of the proposed sureties, Virginia Cid, reconsidered her offer to serve as a surety and was replaced with defendant's father, Amir Alani, at the last minute.  Magistrate Judge Oliver continued to order defendant detained on the grounds that he posed unmitigable risks of nonappearance and danger to the community.

Defendant now appeals this order to this Court, and no new material conditions or terms of release that was not already offered to Magistrate Judge Oliver is being offered now.

**III. RELEVANT STATEMENT OF FACTS**

On June 9, 2022, defendant met with the victim at a mall and sold the victim fake oxycodone pills that contained fentanyl.  (ECF NO. 1, Indictment, p. 7.)  The victim died shortly after this meeting in the mall parking lot.  Id.  Defendant knew that the pills he provided the victim was responsible for the victim's death, for the next day on June 10, 2022, defendant texted his supplier, E.

Estrada, "[m]y boy just died yesterday," and scolded E. Estrada that he "[s]houldn't be selling shit with fentanyl." Id.

Prior to the indictment in this case and after the victim's death, a search warrant was executed in the residence where defendant was living with his partner and proposed surety, Cedric Cid. Officers found several indicia of drug dealing and controlled substances. At a later date, when defendant was arrested for this matter on November 22, 2023, he was under the influence and found with a bag on his person containing baggies, a digital scale, ketamine, methamphetamine, and cocaine. Defendant claimed that he as coming back home from a party with friends.

**IV.  ARGUMENT**

    A. Standard of Review

This Court's review of the detention order is de novo. United States v. Koenig, 912 F.2d 1190, 1192 (9th Cir. 1990). The "district court is not required to start over . . . and proceed as if the magistrate's decision and findings did not exist," but the district court also "should review the evidence before the magistrate and make its own independent determination. . . ." Id. at 1193.

    B. Applicable Law

Detention is appropriate where a defendant is either a danger to the community or a risk of nonappearance; it is not necessary to prove both. 18 U.S.C. § 3142(e)(1); United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985) (Kennedy, J.). "[T]he government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community."

4

United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991) (per curiam).

Here, there is a presumption that defendant is both a danger and a flight risk due to the seriousness of his crime, which has a maximum penalty of life imprisonment and a mandatory minimum of 20 years. 18 U.S.C. § 3142(e)(2)(A). "[O]nce the defendant offers some rebuttal evidence, the presumption of flight or danger does not burst or disappear." United States v. Ward, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999) (collecting cases); see also United States v. Jessup, 757 F.2d 378, 382 (1st Cir. 1985) (Breyer, J.), abrogated on other grounds by United States v. O'Brien, 895 F.2d 810 (1st Cir. 1990). Rather, Congress intended that the statutory presumptions would have a practical effect. Jessup, 757 F.2d at 382. Thus, the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008) (quoting United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986)).

If a defendant proffers evidence to rebut the presumption, the court then also considers: "the nature and circumstances of the offense charged"; "the weight of the evidence"; the defendant's "history and characteristics"; and "the nature and seriousness of the danger to any person or the community" posed by the defendant's release. 18 U.S.C. § 3142(g); Hir, 517 F.3d at 1086. The weight of the evidence is the least important of these factors. United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986) (per curiam). However, evidence of guilt is relevant to the likelihood that a defendant will flee or pose a danger to the community. Id.

### C. Defendant Poses an Unacceptably High Risk of Nonappearance

Defendant is a foreign national, specifically a citizen of Denmark, with ties outside of this country. Defendant's history of international travel shows that he also has the means to leave this country and avoid prosecution for charges that carry a mandatory minimum sentence of 20 years.

The substantive conditions proposed to mitigate this risk are insufficient, and indeed the government submits that there are no conditions available that would lower the risk to a level acceptable for bail for the following reasons:

- $300,000 cash bond is insufficient. Money cannot buy away risk of nonappearance, especially when the potential custodial sentence is so high. As other similarly situated defendants have realized, what is money compared to one's life? Money may be made again, but years lost can never be regained. It cannot be lost on defendant that if he were to receive the mandatory minimum sentence in this case, he would go in as a young man and come out a much older one.
- The proposed sureties are also unsuitable. Drugs and indicia of distribution were found in defendant's shared residence with Mr. Cid. Defendant's drug dealing happened right under Mr. Cid's nose, and Mr. Cid is now in worse physical condition due to his heart and cannot provide the kind of oversight needed. Additionally, the $50,000 appearance bond by Mr. Amir Alani may exceed his annual income. As Pretrial Services has pointed out in other cases, a surety should not be allowed to sign up for an amount that may exceed the amount the surety actually has available.

- Location monitoring or even home confinement does not reveal what defendant is doing at various locations. On the date of the victim's death, location monitoring would merely have shown Pretrial Services that defendant was at home and at the mall. This would not have raised red flags to spur action. It would not have prevented a young man's untimely death.
- Taking away travel documents and restricting travel to this district are not effective conditions that would ensure defendant's presence in this district. Defendants with similar conditions have been able to travel to Mexico without a passport and then leave to other countries, including non-extraditing countries like China.

Defendant's risk of nonappearance is high and cannot be sufficiently mitigated with the proposed and available conditions of bail.

### D. Defendant Is a Danger to the Community and No Condition Can Adequately Mitigate This Danger

Defendant's actions led to the death of someone he claims was his friend. Defendant bought pills of unverified origin from an unknown source and then sold them to the victim as prescription oxycodone pills. On the day of defendant's arrest for this case, defendant was under the influence and found with ketamine, cocaine, and methamphetamine. Defendant also had a used digital scale with white powdery residue and baggies. Thus, after his friend died from drugs he gave him, defendant was peddling more dangerous drugs to other "friends." Defendant is a danger to himself and the community. Drug testing, mental evaluation, and even a residential treatment facility cannot ensure that the danger to the defendant and the community are adequately addressed. Indeed, similarly

7

situated defendants have been able to walk out of residential treatment facilities, and there is nothing the facilities can do to stop them.

In addition, defendant's narrative on his drug use and how that is tied to the instant crimes keeps changing, which should raise red flags for this Court. Initially, defendant stated that he was only a recreational user and that it was part of his "lifestyle," but that he was otherwise a functional adult who was working toward a master's degree at UCLA. Defendant then changed his story to say that he is a hopeless addict engaging in self-destructive behavior, but that he is clean now after a "self-imposed detox." The "self-imposed detox" that defendant speaks of is prison. This Court should not be fooled. Defendant is a threat to himself and the community. He should remain in detention.

**III. CONCLUSION**

Defendant is a drug dealer, and a victim died of fentanyl poisoning as a result. Defendant is dangerous and releasing him on bail pending trial is giving him a chance to flee. The danger and flight risk levels are unacceptably high, and no condition or combination of conditions can make them palatable enough for release. Magistrate Judge Oliver's order of detention should therefore be upheld.