BILAL A. ESSAYLI
Acting United States Attorney
JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division
JEREMY K. BEECHER (Cal. Bar No. 301272)
Assistant United States Attorney
Transnational Organized Crime Section
NICHOLAS G. PURCELL (Cal. Bar No. 313632)
Assistant United States Attorney
General Crimes Section
1400/1200 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-5429/3752
Facsimile: (213) 894-0141
E-mail: Jeremy.Beecher@usdoj.gov
Nicholas.Purcell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ERICK OVED ESTRADA,<br><br>Defendant. | Case No. 2:23-cr-00564-MWF-1<br>Case No. 2:25-CR-00348-MWF<br><br><u>PLEA AGREEMENT FOR DEFENDANT ERIC OVED ESTRADA</u> |

1. This constitutes the plea agreement between Erick Oved Estrada and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned cases. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

## RULE 11(c)(1)(C) AGREEMENT

2. Defendant understands that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

Accordingly, defendant understands that, if the Court determines that it will not accept this agreement, absent a breach of this agreement by defendant prior to that determination and whether or not defendant elects to withdraw any guilty plea entered pursuant to this agreement, this agreement will, with the exception of paragraph 28 below, be rendered null and void and both defendant and the USAO will be relieved of their obligations under this agreement. Defendant agrees, however, that if defendant breaches this agreement prior to the Court's determination whether or not to accept this agreement, the breach provisions of this agreement, paragraphs 31 and 32 below, will control, with the result that defendant will not be able to withdraw any guilty plea entered pursuant to this agreement, the USAO will be relieved of all of its obligations under this agreement, and the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty plea.

DEFENDANT'S OBLIGATIONS

3. Defendant agrees to:

a. At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count 1 of the indictment in United States v. Erick Oved Estrada, Case No. 2:23-CR-00564-MWF-1, which charges defendant with conspiracy to distribute controlled substances resulting in death in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and appear and plead guilty to the sole count of the indictment in United States v. Erick Oved Estrada, Case No. 2:25-CR-00348-MWF, which charges defendant with distribution of fentanyl resulting in death in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement and affirmatively recommend to the Court that it impose sentence in accordance with paragraph 20 of this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h. Agree to and not oppose the imposition of the following condition of probation or supervised release:

i. The defendant shall submit defendant's person and any property under defendant's control, including any residence, vehicle, papers, computer and other electronic communication or data storage devices and media, and effects, to suspicion-less search and seizure at any time of the day or night by any law enforcement or probation officer, with or without a warrant, and with or without cause; and if stopped or questioned by a law enforcement officer for any reason, defendant shall notify that officer that defendant is on federal supervised release and subject to search.

4. Defendant further agrees:

a. To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in, the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following: $57,231.01 in United States currency seized on November 21, 2023 (DEA seizure numbers 24-DEA-708113, 24-DEA-708114, and 24-DEA-708116) (collectively, the "Forfeitable Property").

b. To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the property.

c. That the Preliminary Order of Forfeiture shall become final as to the defendant upon entry.

d. To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

e. Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property. If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property.

f. Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

g. Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

h. To prevent the transfer, sale, destruction, or loss of any and all property described above to the extent defendant has the ability to do so.

i. To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

j. That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

k. With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment. Defendant acknowledges that the forfeiture of the Forfeitable Property is part of the sentence that may be imposed in these cases and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

## THE USAO'S OBLIGATIONS

5. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement and affirmatively recommend to the Court that it impose sentence in accordance with paragraph 20 of this agreement.

c. At the time of sentencing, move to dismiss the remaining counts of the indictment in United States v. Erick Oved Estrada, Case No. 2:23-CR-00564-MWF-1, as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed. Defendant further agrees that he may be treated as if he had been convicted of the dismissed charges for purposes of U.S.S.G. § 1B1.2(c), regardless of whether the factual basis below would be sufficient to satisfy all elements of each charge. Defendant waives the right to challenge the sufficiency of the factual basis as to any element of any dismissed charge.

d. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

## NATURE OF THE OFFENSE

6. Defendant understands that for defendant to be guilty of the crime charged in count 1 of the indictment in United States v.

Erick Oved Estrada, Case No. 2:23-CR-00564-MWF-1, that is, conspiracy to distribute controlled substances resulting in death, the following must be true: First, there was an agreement between two or more persons to distribute controlled substances; second, defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose; and third, the distribution of controlled substances that was the object of the conspiracy resulted in death. "To distribute" means to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in that transaction. It does not matter whether the defendant knew that the substance was fentanyl. It is sufficient that the defendant knew that it was some kind of a federally controlled substance.

7. Defendant understands that for defendant to be guilty of the crime charged in the single-count indictment in United States v. Erick Oved Estrada, Case No. 2:25-CR-00348-MWF, that is, distribution of fentanyl resulting in death, the following must be true: First, the defendant knowingly distributed fentanyl; second, the defendant knew that it was fentanyl or some other federally controlled substance; and third, the defendant's distribution of fentanyl resulted in death.

8. Defendant understands that for defendant to be subject to the statutory maximum sentence and statutory minimum sentence set forth below, the government must prove beyond a reasonable doubt that: as to United States v. Erick Oved Estrada, Case No. 2:23-CR-00564-MWF-1, the conspiracy in which defendant participated resulted in the death of victim C.N. and C.N.'s use of fentanyl distributed by defendant was the but-for cause of his death; and as to United States

v. Erick Oved Estrada, Case No. 2:25-CR-00348-MWF, victim S.M.'s use of fentanyl distributed by defendant was the but-for cause of death. A particular controlled substance is a "but for" cause of death where, but for the victim's use of the controlled substance, the victim would not have died. The defendant need not have intended that death result from the use of the controlled substance, and it is not necessary that the defendant knew, or should have known, that death would result from the use of the controlled substance that defendant distributed. Defendant admits that the conspiracy in which defendant participated resulted in the death of victim C.N. and that C.N.'s use of fentanyl distributed by defendant and/or his co-conspirators was the but-for cause of C.N.'s death. Defendant admits that S.M.'s use of fentanyl distributed by defendant was the but-for cause of S.M.'s death.

## PENALTIES AND RESTITUTION

9. Defendant understands that the statutory maximum sentence that the Court can impose for conspiracy to distribute fentanyl resulting in death, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C) and 846, and for distribution of fentanyl resulting in death, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), is: lifetime imprisonment; a lifetime period of supervised release; a fine of $2,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10. Defendant understands that, absent a determination by the Court that defendant's case satisfies the criteria set forth in 18 U.S.C. § 3553(f), the statutory mandatory minimum sentence that the Court must impose for conspiracy to distribute fentanyl resulting in

death, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C) and 846, and for distribution of fentanyl resulting in death, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), is: 20 years' imprisonment, followed by a three-year period of supervised release, and a mandatory special assessment of $100. Defendant acknowledges that defendant's case does not satisfy the criteria set forth in 18 U.S.C. § 3553(f) because the offense to which defendant is pleading guilty resulted in death.

11. Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

12. Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any count dismissed pursuant to this agreement as well as all relevant conduct, as defined in

U.S.S.G. § 1B1.3, in connection with those counts. The parties currently believe that the applicable amount of restitution is approximately $3,815.41 as to victim C.N. and $39,330.57 as to victim S.M., but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

13. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

14. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in these cases may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

15. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in these cases make it practically

inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in these cases. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

16. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

United States v. Estrada, Case No. 2:23-cr-00564-MWF-1

Beginning on a date unknown and continuing until no earlier than March 8, 2023, in Los Angeles and Ventura Counties, within the Central District of California, and elsewhere, defendant, together with co-defendants Tomas Marquez-Ruiz, Gilberto Marquez, and Caseya

Chanel Brown, conspired with each other and others to knowingly and intentionally distribute the following controlled substances:

1. Cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C); and

2. Oxycodone, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

Defendant joined in this agreement knowing of its unlawful purpose to distribute cocaine and oxycodone, and intending to help accomplish that purpose.

The distribution of said oxycodone that was an object of the conspiracy, but which in fact contained fentanyl, resulted in the death of victim C.N., on or about June 9, 2022.

In furtherance of the foregoing conspiracy, defendant committed the following overt acts:

On May 29, 2019, the user of a telephone line controlled by defendant and used by defendant and co-conspirators to further the drug distribution conspiracy ("Phone 1"), using coded language in a text message conversation, agreed to sell two "eight balls" -- that is, two 3.5-gram packages -- of cocaine for approximately $440 to an individual who was posing as a customer, but who was in fact a confidential informant working with law enforcement ("CI-1"), and further agreed to dispatch a driver to deliver the cocaine to CI-1 at 2632 Tapo Canyon Road, Simi Valley, California.

On May 29, 2019, Co-Conspirator 1, using coded language in a text message conversation, provided his estimated time of arrival to CI-1.

On May 29, 2019, Co-Conspirator 1, on behalf of defendant, arrived at 2632 Tapo Canyon Road, Simi Valley, California, and delivered approximately 7.1 grams of cocaine to CI-1 in exchange for approximately $440.

On October 12, 2019, Marquez, using coded language in a text message conversation, advised defendant and Marquez-Ruiz about their "inventory update" -- coded language referring to their drug inventory -- which included: "3 sealed bricks," with each brick being one kilogram; "2,900 bagged," with each bag containing 3.5 grams of cocaine; and "600g in container," referring to 600 grams of cocaine.

On May 31, 2020, Marquez-Ruiz, using coded language in a text message conversation, provided defendant a list of drug delivery drivers under their employ, the hours the drivers worked, and the compensation the drivers were owed, for a total of "$16,374 to complete payroll."

On July 17, 2020, the user of Phone 1, using coded language in a text message conversation, agreed to sell one "eight ball" -- that is, 3.5 grams -- of cocaine for approximately $320 to an individual whom he believed to be a customer, but who was in fact a confidential informant working with law enforcement ("CI-2"), at 2619 Tapo Canyon Road, Simi Valley, California.

On July 17, 2020, Marquez-Ruiz, using coded language in a text message conversation, told Brown that he had the drugs for her deliveries to customers and referenced defendant: "I have the stuff ready I'm just waiting for one of Ericks [defendant's] car to be washed so I can take it to him," to which Brown responded, "Okay."

On July 17, 2020, Marquez-Ruiz, using coded language in a text message conversation, told Brown to meet him at one of defendant's businesses called "EGN," which Brown confirmed that she would.

On July 17, 2020, Brown, on behalf of defendant, arrived at 2619 Tapo Canyon Road, Simi Valley, California and provided CI-2 approximately 3.55 grams of cocaine in exchange for approximately $320.

On July 31, 2020, the user of Phone 1, using coded language in a text message conversation, agreed to sell "a ball" -- that is, 3.5 grams -- of cocaine to CI-2 for approximately $320 at 2619 Tapo Canyon Road, Simi Valley, California.

On July 31, 2020, Co-Conspirator 2, using coded language in a text message conversation, provided her estimated time of arrival to CI-2, and told CI-2 that there was a security guard right by the area where CI-2 was waiting for her.

On July 31, 2020, Co-Conspirator 2, on behalf of defendant, arrived at 2619 Tapo Canyon Road, Simi Valley, California and provided approximately 3.53 grams of cocaine to CI-2 in exchange for approximately $320.

On December 9, 2020, the user of Phone 1, using coded language in a text message conversation, agreed to sell one "eight ball" -- that is, 3.5 grams -- of cocaine for approximately $320 to an individual whom he believed to be a customer, but who was in fact a confidential informant working with law enforcement ("CI-3"), for approximately $320 at 2619 Tapo Canyon Road, Simi Valley, California.

On December 9, 2020, Co-Conspirator 3, using coded language in a text message conversation, provided his estimated time of arrival to CI-3.

On December 9, 2020, Co-Conspirator 3, on behalf of defendant, arrived at 2619 Tapo Canyon Road, Simi Valley, California and provided approximately 3.43 grams of cocaine to CI-3 in exchange for approximately $320.

On June 8, 2022, the user of Phone 1 sent a text message to Arian Alani instructing Alani to only communicate via text message ("Only text here please") after Alani attempted to call Phone 1 to purchase drugs.

On June 8, 2022, the user of Phone 1, using coded language in a text message conversation, provided Alani with a list of available drugs for sale and their prices.

On June 8, 2022, using coded language in a text message conversation, the user of Phone 1 negotiated the price for oxycodone with Alani, who requested 25 pills and stated, "And let's keep doing business after that."

On June 8, 2022, the user of Phone 1 informed Alani to expect a driver to contact him at the address Alani provided.

On June 8, 2022, defendant's driver provided to Alani purported oxycodone pills, which contained fentanyl, resulting in the death of C.N. the following day, after Alani re-sold some of the fentanyl-laced pills to C.N., who consumed half of one and died.

On June 10, 2022, using coded language in a text message conversation, the user of Phone 1 told Alani that the purported oxycodone pills that had been sold to Alani were not prescription pills, to which Alani replied, "[m]y boy just died yesterday" -- a reference to C.N. -- and that defendant "[s]houldn't be selling shit with fentanyl."

Based on these facts, defendant admits and agrees that he knowingly and intentionally participated in the charged conspiracy, the execution of which is attributable to defendant as a result of his own conduct and the conduct of other conspirators that was within the scope and in furtherance of the conspiracy, and reasonably foreseeable to defendant, and which resulted in the death of victim C.N. on June 9, 2022, and, between July 30, 2020, and October 16, 2020, in the distribution to customers of at least 6.5 kilograms of cocaine, as well as additional quantities of MDMA, Adderall, Xanax, fentanyl, LSD, Viagra, and Oxycodone, among other controlled substances.

United States v. Estrada, Case No. 2:25-CR-00348-MWF

On March 8, 2023, as part of his drug delivery service, defendant knowingly and intentionally distributed fentanyl, a Schedule II narcotic drug-controlled substance, to victim S.M. that resulted in victim S.M.’s death.

Specifically, between March 6 and 8, 2023, the user of Phone 1 text messaged with victim S.M. regarding purchasing oxycodone and Xanax pills. On March 8, 2023, the day of her death, S.M. texted Phone 1 to purchase two oxycodone pills and two Xanax pills. The user of Phone 1 replied that the four pills would cost $80 and provided S.M. with an address. Later that night, defendant’s driver, on behalf of defendant, provided to S.M. the purported Xanax pills and oxycodone pills, which contained fentanyl. S.M. then returned home, where she ingested the fentanyl she received from defendant’s drug delivery service, which caused S.M. to have a fatal fentanyl overdose, resulting in her death.

SENTENCING FACTORS AND AGREED-UPON SENTENCE

17. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only.

18. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 38 | U.S.S.G. § 2D1.1(a)(2) |
| Multiple Deaths | +5 | U.S.S.G. §§ 2D1.1(b)(18), 5C1.2 |
| Acceptance of Responsibility: | -3 | U.S.S.G. §§ 3E1.1(a), (b) |
| Total Offense Level: | 40 | |
| Criminal History Category: | I | |
| Guideline Range: | 292-365 months' imprisonment | |

19. The parties agree not to argue that any other specific offense characteristics, adjustments, or departures be imposed.

20. Defendant and the USAO agree that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7) and the relevant sentencing guideline factors set forth above, an appropriate disposition of these cases is that the Court impose a sentence of: between 240 and 360 months' imprisonment, to be served concurrently; five years' supervised release with conditions to be fixed by the Court; a $100 special assessment; and $3,815.41 restitution as to victim C.N. and $39,330.57 as to victim S.M. The parties agree that restitution is to be paid pursuant to a schedule to be fixed by the Court. The parties also agree that no prior imprisonment (other than

credits that the Bureau of Prisons may allow under 18 U.S.C. § 3585(b)) may be credited against this stipulated sentence, including credit under Sentencing Guideline § 5G1.3.

WAIVER OF CONSTITUTIONAL RIGHTS

21. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel – and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

LIMITED WAIVER OF DISCOVERY

22. Defendant acknowledges that he has received substantial discovery from the government and that he has had sufficient time to review and discuss that discovery with his attorney. In exchange for the government's obligations under this agreement, defendant waives and gives up any right he may have to review additional discovery that the government has not produced or to claim that the government has not produced all discovery.

WAIVER OF APPEAL OF CONVICTION AND COLLATERAL ATTACK

23. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

24. Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts

provided herein is insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

25. Defendant agrees that, provided the Court imposes the sentence specified in paragraph 20 above, defendant gives up the right to appeal any portion of that sentence, and the procedures and calculations used to determine and impose any portion of that sentence.

26. The USAO agrees that, provided the Court imposes the sentence specified in paragraph 20 above, the USAO gives up its right to appeal any portion of that sentence, and the procedures and calculations used to determine and impose any portion of that sentence.

WAIVER OF RIGHTS CONCERNING PLEA COLLOQUY AND FACTUAL BASIS

27. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

Defendant further agrees that this paragraph of the agreement is severable. Thus, defendant's waivers are binding and effective even if, subsequent to defendant's signing this agreement, defendant declines to plead guilty, the Court declines to accept his guilty

plea, or, if this agreement is of the type described in Federal Rule of Criminal Procedure 11(c)(1)(A) or (c)(1)(C), the Court rejects this agreement. Defendant also agrees that his waivers are binding and effective even if some other portion of this agreement is found to be invalid by this Court or the Ninth Circuit.

RESULT OF WITHDRAWAL OF GUILTY PLEA

28. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

29. Defendant agrees that if the counts of conviction are vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

30. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

31. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

32. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

33. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

34. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 18 are consistent with the facts of these cases. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

## NO ADDITIONAL AGREEMENTS

35. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

36. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

BILAL A. ESSAYLI
Acting United States Attorney

| | |
|---|---|
| JEREMY K. BEECHER<br>NICHOLAS G. PURCELL<br>Assistant United States Attorneys | October 10, 2025<br>Date |
| ERICK OVED ESTRADA<br>Defendant | 10-08-25<br>Date |
| MEGHAN BLANCO<br>Attorney for Defendant | 10-08-25<br>Date |

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

| | |
|---|---|
| ERICK OVED ESTRADA<br>Defendant | 10-08-25<br>Date |

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am ERICK OVED ESTRADA's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

| | |
|---|---|
| MEGHAN BLANCO<br>Attorney for Defendant | 10-08-25<br>Date |